UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                              :

GARY COOPER,                       :

                            :

               Plaintiff,    :

                            :     **OPINION AND ORDER**

       - against -        :

                            :     **12 Civ. 8008 (SAS)**

THE CITY OF NEW YORK and    :
DETECTIVE MICHAEL          :
MACDOUGALL,               :

                            :

             Defendants.   :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

          Plaintiff Gary Cooper has sued the City of New York (the "City") and

Detective Michael MacDougall (collectively "defendants") under 42 U.S.C. § 1983

for malicious prosecution arising out of Cooper's arrest for the felony sale of

MDMA, a controlled substance, on April 25, 2009.  Cooper also brings a *Monell*

claim against the City alleging a policy of racial discrimination in violation of the

First, Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution.[1]  On

October 28, 2009, the criminal charges against Cooper were dismissed because the

prosecution was not ready to proceed.  Defendants now move to dismiss Cooper's

---

[1]    *See* Complaint ("Compl.") ¶¶ 23–35, 36–44.

Complaint.  This motion is: (1) granted with respect to the City; and (2) denied with respect to Detective MacDougall.

## II.   FACTUAL ALLEGATIONS

### A.   Cooper's Prior Experience with the Police

Cooper is a twenty-five year old African-American male who wears urban style clothing which he designs.[2]  Cooper has had three prior arrests that were either dismissed by the court or dropped by the prosecution.[3]  These arrests resulted in two civil rights lawsuits against the City, both of which settled.[4]  These lawsuits included claims of racial profiling.[5]  Additionally, Cooper's mother, Linda Cooper, has criticized the New York City Police Department for racially discriminatory policies.[6]  Cooper claims that his prior arrests motivated his most recent arrest, described below.[7]

---

[2]   *See id.* ¶ 18.

[3]   *See id.*

[4]   *See id.* ¶ 17.

[5]   *See id.*

[6]   *See id.* ¶ 18.

[7]   *See id.* ¶ 21.

**B.     Cooper's Arrest on April 25, 2009**

On April 25, 2009, police officers arrested Cooper near his home on West 84th Street in Manhattan.[8]  Following his arrest, Cooper observed officers congratulating each other and discussing celebrating his arrest with a pizza party.[9] Cooper asked officers why he was being arrested, to which an officer responded that Cooper was "wearing the wrong clothing."[10]  He was wearing a red t-shirt at the time.[11]  After Cooper was arrested, he was escorted to his nearby home.[12]  On the way there, an unnamed officer asked Cooper if he was a "[B]lood."[13]

Officers searched Cooper's home for "coke, guns, and ecstasy," claiming that they had a warrant.[14]  The purported warrant was not shown to Cooper.[15]  Cooper denied having any of these items and told the officers that he

---

[8]     *See id.* ¶ 14.

[9]     *See id.* ¶ 18.

[10]    *Id.* ¶ 14.

[11]    *See id.*

[12]    *See id.* ¶ 15.

[13]    *Id.* ¶ 14.

[14]    *Id.* ¶ 15.

[15]    *See id.*

was a school teacher, to which the officers responded with laughter.[16]  Cooper told the officers that he was in possession of a small amount of marijuana for personal use.[17]  The search revealed only the marijuana which Cooper had identified.[18]  Subsequently, officers escorted Cooper to the police station where he was denied the use of a phone.[19]

### C.     The Questioning and Charging of Cooper

Detective MacDougall began questioning Cooper at the police station.[20]  Detective MacDougall allegedly told Cooper he was aware that Cooper "did not play a part in what was going on."[21]  Yet Detective MacDougall attempted — but failed — to get Cooper to write a confession.[22]  Cooper was never read his *Miranda* rights.[23]

---

[16]     *See id.*

[17]     *See id.*

[18]     *See id.*

[19]     *See id.*

[20]     *See id.*

[21]     *See id.*

[22]     *See id.*

[23]     *See id.*

Cooper, along with co-defendant Denis Stock, was then charged with one Count of Criminal Sale of a Controlled Substance in the Second Degree and one count of Criminal Sale of a Controlled Substance in the Fifth Degree.[24] Cooper was not charged with possession of marijuana.[25]  Specifically, the felony complaint states that "[Detective MacDougall] is further informed that on April 4, 2009 at approximately 3:45 P.M. at 150 West 84th Street, defendant Cooper did give defendant Stock a bag, which defendant Stock then gave to [an] informant in exchange for [money]."[26]  That bag allegedly contained 100 pills of ecstasy, also known as MDMA.[27]

Cooper was arraigned on Monday, April 27, 2009, two days after his arrest.[28]  The Court set bail at $7,500.[29] Cooper's parents were ready to post bail but the New York County District Attorney's Office ("DAO") asked for a surety

---

[24]     *See id.* ¶ 16, 19.

[25]     *See id.* ¶¶ 16.

[26]     *Id.* ¶ 19.  Defendants suggest that a fellow undercover officer informed Detective MacDougall about the alleged transaction. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Def. Mem.") at 10.

[27]     *See* Compl. ¶ 19.

[28]     *See id.* ¶ 20.

[29]     *See id.*

5

hearing which required Cooper's parents to supply financial statements to verify the source of the bail they were posting.[30]  As a result, Cooper was released on May 1, 2009 instead of April 27, 2009, leading to an extra ninety-seven hours of incarceration.[31]  On October 28, 2009, all charges against Cooper were dismissed when the DAO conceded that it was not ready to proceed.[32]

Cooper lost income when he was suspended from his job as a para-professional by the New York City Department of Education, although he was reinstated after the charges against him were dismissed.[33]  Cooper claims he suffered damage to his reputation in the community and to his career.[34]  Cooper filed the instant Complaint on October 26, 2012, alleging that he was maliciously prosecuted in retaliation for filing previous lawsuits.[35]

---

[30]   *See id.*

[31]   *See id.* ¶¶ 20–21.

[32]   *See id.* ¶ 22.

[33]   *See id.* ¶¶ 22, 34.

[34]   *See id.* ¶ 34.

[35]   *See id.* ¶ 22.

## III.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[36]  The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal*.[37]  *First*, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[38]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to withstand a motion to dismiss.[39]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[40]

---

[36]      *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks and citation omitted).

[37]      556 U.S. 662, 679 (2009).

[38]      *Id.*

[39]      *Id.* at 663.

[40]      *Id.* at 664.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in a complaint must meet a standard of "plausibility."[41]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[43]  For the purposes of a 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[44]

## IV.   APPLICABLE LAW

### A.   Section 1983 and *Monell* Liability

Section 1983 of Title 42 of the United States Code ("section 1983") creates "'a species of tort liability'" for, among other things, certain violations of constitutional rights.[45]  As the Supreme Court established in *Monell v. New York*

---

[41]   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[42]   *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

[43]   *Id.* (quotation marks and citation omitted).

[44]   *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[45]   *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)).

*City Department of Social Services*,[46] in order to have recourse against a municipality under section 1983, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury."[47]  "In other words, municipalities are 'responsible only for their own illegal acts,' and cannot be held 'vicariously liable under § 1983 for their employees' actions.'"[48]  In general, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[49]

One way to establish the existence of a municipal policy or custom is through a showing of "deliberate indifference" by high-level officials.  "'[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom

---

[46]     436 U.S. 658, 690–91 (1978).

[47]     *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

[48]     *Cash*, 654 F.3d at 333 (quoting *Connick*, 131 S. Ct. at 1359) (quotation marks and citations omitted).

[49]     *Connick*, 131 S. Ct. at 1359.

9

that is actionable under § 1983.'"[50]  Deliberate indifference requires "'proof that a

municipal actor disregarded a known or obvious consequence of his action.'"[51]

Recognizing that deliberate indifference is "a stringent standard of fault," the

Second Circuit requires "that the policymaker's inaction was the result of

'conscious choice' and not 'mere negligence.'"[52]

  A municipality may incur *Monell* liability based on deliberate

indifference through its training and supervision practices.  "[D]eliberate

indifference may be inferred where 'the need for more or better supervision to

protect against constitutional violations was obvious,' but the policymaker 'fail[ed]

to make meaningful efforts to address the risk of harm to plaintiffs[.]'"[53]  Although

"[a] municipality's culpability for a deprivation of rights is at its most tenuous

where a claim turns on a failure to train,"[54] the Supreme Court has held that

"[w]hen city policymakers are on actual or constructive notice that a particular

---

[50] *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).

[51] *Connick*, 131 S. Ct. at 1359 (quoting *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997)).

[52] *Cash*, 654 F.3d at 334 (quoting *Amnesty*, 361 F.3d at 128).

[53] *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

[54] *Connick*, 131 S. Ct. at 1359 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)).

omission in their training program causes city employees to violate citizens'
constitutional rights, the city may be deemed deliberately indifferent if the
policymakers choose to retain that program."[55]

The Second Circuit framed the deliberate indifference inquiry in three
parts:

> (1) [the] policymaker knows "to a moral certainty" that its
> employees will confront a given situation; (2) either [the] situation
> presents employees with [a] difficult choice that will be made less
> so by training or supervision, or there is a record of employees
> mishandling [the] situation; and (3) [a] wrong choice by
> employees will frequently cause [the] deprivation of constitutional
> rights.[56]

"Where the plaintiff establishes all three elements, then . . . the policymaker should
have known that inadequate training or supervision was 'so likely to result in the
violation of constitutional rights, that the policymakers of the city can reasonably
be said to have been deliberately indifferent to the need.'"[57] "A pattern of similar
constitutional violations by untrained employees is 'ordinarily necessary' to

---

[55]     *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407).

[56]     *Cash*, 654 F.3d at 334 (citing *Walker v. City of New York*, 974 F.2d
293, 297–98 (2d Cir. 1992)).

[57]     *Walker*, 974 F.2d at 298 (quoting *City of Canton, Ohio v. Harris*, 489
U.S. 378, 390 (1989)). In order to establish *Monell* liability based on the *Walker*
test, plaintiffs must also, of course, show that the training or supervision was in
fact inadequate and that this inadequacy caused plaintiff's constitutional injuries.
*See Reynolds*, 506 F.3d at 193.

demonstrate deliberate indifference for purposes of failure to train."[58]

### B.    Malicious Prosecution

In order to establish a claim for malicious prosecution under section 1983, a plaintiff must allege the elements of malicious prosecution under state law.[59]  The elements of a malicious prosecution claim under New York law are: (1) the commencement or continuation of a criminal proceeding; (2) the favorable termination of that proceeding; (3) lack of probable cause; and (4) malice.[60] Probable cause defeats a claim of malicious prosecution.[61]  Probable cause, in the context of malicious prosecution, has been described as "facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty."[62]

An indictment by a grand jury creates a presumption of probable cause that may be overcome only with "evidence that the indictment was the

---

[58]     *Connick*, 131 S. Ct. at 1360 (quoting *Bryan Cnty.*, 520 U.S. at 409). By contrast, "once a municipal *policy* is established, 'it requires only one application . . . to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy.'"  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n.6 (1986) (quoting *Tuttle*, 471 U.S. at 822) (emphasis added).

[59]     *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir. 2002).

[60]     *See Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013).

[61]     *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

[62]     *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003).

product of fraud, perjury, the suppression of evidence by the police, or other police conduct taken in bad faith."[63]   However, a plaintiff can no longer overcome this presumption by alleging that a police officer committed perjury before the grand jury as officers are entitled to absolute immunity for their testimony in that forum.[64]

       "In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."[65]   Further, "[a]lthough there is a presumption that a prosecutor exercises independent judgement in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution 'when a police officer creates false information likely to

---

[63]     *Newton v. City of New York,* 640 F. Supp. 2d 426, 442 (S.D.N.Y. 2009) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).

[64]     *See Rehberg v. Paul*, 132 S. Ct. 1497, 1510 (2012); *see also Brown v. City of New York*, No. 08 Civ. 5095, 2013 WL 1338785, at *4 n.3 (E.D.N.Y. Apr. 1, 2013) ("As a result of *Rehberg*, plaintiff cannot base his malicious prosecution claim on the theory that [Officer] Dimitrakakis lied to the grand jury, nor can he use Dimitrakakis's grand jury testimony to rebut the presumption of probable cause.") (citations omitted).

[65]     *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006). *Accord Cox v. County of Suffolk*, 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (holding that police officer initiated prosecution against defendant when he swore and subscribed to a felony complaint).

influence a jury's decision and forwards that information to prosecutors.'"[66]

For a proceeding to be "favorably terminated," it need not result in an acquittal, although that is obviously sufficient.[67]  When a termination is inconclusive because it does not address the merits of the charge, the facts of the surrounding termination must be examined to determine "whether the failure to proceed implies a lack of reasonable grounds for the prosecution."[68]  Finally, malice "does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"[69]  In most cases, a lack of probable cause is not dispositive but "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."[70]

---

[66]     *Mitchell*, 434 F. Supp. 2d at 227 (quoting *Brome v. City of New York*, No. 02 Civ. 7184, 2004 WL 502645, at *5-6 (S.D.N.Y. Mar. 15, 2004)).

[67]     *See Jovanovic v. City of New York,* No. 04 Civ. 8437, 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006).

[68]     *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989).

[69]     *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).

[70]     *Id.* (internal quotation marks omitted).  *Accord Ricciuti v. New York City Transp. Auth.*, 124 F.3d 123, 131 (2d Cir. 1997).

### C.    Qualified Immunity

"[G]overnment officials are entitled to some form of immunity from suits for damages.  As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability."[71]  "In the case of legislators, judges, and certain executive officials such as prosecutors, the protection usually takes the form of absolute immunity from liability for damages."[72]  "In the case of most executive employees, however, the protection takes the form of 'qualified immunity,' *i.e.*, immunity from liability if the employee was acting in subjective and objective good faith."[73]

"Qualified immunity is an affirmative defense designed to protect the defendant public official not just from liability but also from suit thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial."[74]  "Qualified immunity is a defense available only to

---

[71]    *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  *Accord Cornejo v. Bell*, 592 F.3d 121, 124 (2d Cir. 2010).

[72]    *Cornejo*, 592 F.3d at 124.

[73]    *Id.*

[74]    *Amore v. Novarro*, 610 F.3d 155, 161 (2d Cir. 2010) (quotation marks, citation, and alterations omitted).  *Accord Jenkins v. City of New York*, 478 F.3d 76, 87 n.9 (2d Cir. 2007) ("[Qualified immunity] is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Mitchell*

individuals sued in their individual capacity.  '[M]unicipalities have no immunity

from damages for liability flowing from their constitutional violations.'"[75]  In all

cases, the qualified immunity analysis mandates a fact-specific inquiry.

"[G]overnment officials performing discretionary functions generally

are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known."[76]  A discretionary function "involves an element of

judgment or choice," such that the activity at issue does not have a predetermined

outcome.[77]  A government official engaged in ministerial "conduct that is not the

product of independent judgment will be unaffected by threat of liability" and is

therefore not protected by immunity doctrines.[78]

The inquiry as to whether an eligible government official is entitled to

qualified immunity is two-fold.  *First*, the court "must decide whether the facts that

---

*v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original))).

[75]      *Askin v. Doe No. 1*, No. 12 Civ. 877, 2013 WL 4488698 at *4 (2d Cir. Aug. 23, 2013) (quoting  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012), in turn quoting *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)).

[76]      *Harlow*, 457 U.S. at 818.

[77]      *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

[78]      *Id.*

a plaintiff has alleged make out a violation of a constitutional right."[79]  *Second*,

"the court must decide whether the right at issue was clearly established at the time

of the defendant's alleged misconduct."[80]  Courts have "discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand."[81]

The Second Circuit has held that a right is clearly established for

qualified immunity purposes if "(1) the law is defined with reasonable clarity, (2)

the Supreme Court or the Second Circuit has recognized the right, and (3) a

reasonable defendant would have understood from the existing law that his conduct

was unlawful."[82]  "'Unless the plaintiff's allegations state a claim of violation of

clearly established law, a defendant pleading qualified immunity is entitled to

dismissal.'"[83]

---

[79]     *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[80]     *Id*. (citation omitted).

[81]     *Id*. (quotation marks and citation omitted).  *Pearson* recognized,
however, that the traditional sequence "is often appropriate."  *Id.* at 236.

[82]     *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quotation
marks and citation omitted).  *Accord Saucier v. Katz*, 533 U.S. 194, 202 (2001)
("The relevant, dispositive inquiry in determining whether a right is clearly
established is whether it would be clear to a reasonable officer that his conduct
was unlawful in the situation he confronted.").

[83]     *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010) (quoting *Forsyth*, at
526).

### D.    Leave to Amend

Whether to permit a plaintiff to amend a complaint is a matter committed to a court's "sound discretion."[84]   Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[85]   "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[86]   Leave to amend should be denied, however, where the proposed amendment would be futile.[87]

## V.    DISCUSSION

### A.    Malicious Prosecution

The first requirement for a malicious prosecution claim under New York law is that the defendant initiated or continued a criminal proceeding against the plaintiff.[88]   Defendants argue that Cooper's malicious prosecution claim against Detective MacDougall must be dismissed because it was the prosecutor, and not

---

[84]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[85]    Fed. R. Civ. P. 15(a).

[86]    *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[87]    *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87–88 (2d Cir. 2002).

[88]    *See Swartz*, 704 F.3d at 111–12.

18

Detective MacDougall, who initiated the prosecution against Cooper.[89]  "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant."[90]  However, a plaintiff seeking to bring a malicious prosecution claim against an officer may overcome that presumption by demonstrating that the officer-defendant "'played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act,'"[91] or that the officer-defendant "created false information and forwarded it to prosecutors."[92]

Cooper has pleaded facts — presumed to be true — that overcome the presumption that the prosecutor, not Detective MacDougall, initiated the criminal proceedings against Cooper.  Specifically, Cooper alleges that Detective MacDougall told him at the police station that he knew Cooper was not involved in

---

[89]   *See* Def. Mem. at 4–5.

[90]   *Gilman v. Marsh & McLennan Cos., Inc.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012).

[91]   *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (quoting *DeFilippo v. County of Nassau*, 583 N.Y.S.2d 283, 284 (2d Dep't 1992)).

[92]   *Id.  Accord Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (noting that "generally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior").

the ecstasy dealing scheme.[93]  Yet Detective MacDougall signed an affidavit

attesting to the drug deal and stating that Cooper sold a bag "contain[ing] 100 pills

of MDMA."[94]  Drawing all reasonable inferences in Cooper's favor, the Complaint

pleads that Detective MacDougall initiated the criminal proceeding against Cooper

by providing the prosecutor with information he knew to be false.[95]  Thus, Cooper

has adequately pled the first element of a malicious prosecution claim.

### B.   Qualified Immunity

Defendants argue that Detective MacDougall is entitled to qualified

immunity because he reasonably relied upon information provided by an

undercover officer in signing the affidavit.[96]  This information was the sole factual

---

[93]   *See* Compl. ¶ 15.

[94]   *Id.* ¶ 19.

[95]   *See Espada*, 522 F. Supp. 2d at 553.

[96]   *See* Def. Mem. at 9-10.  Defendants argue that my decision in
*Annunziata v. City of New York*, No. 06 Civ. 7637, 2008 WL 2229903, at *4
(S.D.N.Y. May 28, 2008), supports a finding that Detective MacDougall is entitled
to qualified immunity.  The facts of *Annunziata*, however, are easily
distinguishable.  In *Annunziata*, I found that the arresting officers had "no reason to
disbelieve [their fellow officer's] statement that Annunziata was the shooter or
disobey [his] command to arrest Annunziata."  *Id.* at *5.  In this case, by contrast,
Cooper alleges that Detective MacDougall knew that he was innocent of the felony
drug charges.

basis for the felony drug charges against Cooper.[97]   However, qualified immunity
is unavailable when an officer knows that the information relied upon is false and it
is reasonably foreseeable that the deception will result in a deprivation of liberty.[98]
As discussed above, Cooper has alleged that Detective MacDougall knew he was
innocent of the charges but chose to provide contrary information in order to
deceive the prosecutor.  Taking these allegations as true, Detective MacDougall is
not entitled to qualified immunity.

### C.   *Monell* Liability

Cooper alleges that the City has a policy of racial profiling that led to
his arrest and subsequent prosecution in violation of his constitutional rights.[99]

---

[97]      *See* Compl. ¶ 19.

[98]      *See Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir. 2000) (holding that
"the right not to be deprived of liberty as a result of *any government officer's*
fabrication of evidence" is clearly established, and thus that a government officer
who fabricates evidence, where it is reasonably foreseeable that use of the
fabricated evidence will result in a deprivation of liberty, is not entitled to qualified
immunity) (emphasis in original).

[99]      At the time Cooper was placed under arrest, he was wearing a red
shirt.  *See* Compl. ¶ 14.  Cooper asked why he was being arrested.   *Id*.  An officer
responded by chastising him for wearing the "wrong" clothing and calling him a
"[B]lood." *Id*.   However, merely wearing a red shirt while being African-
American, without more, does not justify an arrest even under the "reasonable
suspicion" standard.  *See Florida v. J.L.*, 591 U.S. 266, 271-72 (1968); *Floyd v.
City of New York*, 813 F. Supp. 2d 457, 469 (S.D.N.Y. 2011) ("Defendants cannot
establish that, as a matter of law, Floyd's furtive movements and possession of a

Specifically, Cooper alleges that the City's *de facto* policies include the failure to properly train police officers, resulting in the racial profiling of African-Americans.  He alleges,

> [u]pon information and belief, the CITY OF NEW YORK failed to screen, hire, supervise and discipline their police officers, including the DEFENDANT DETECTIVE MICHAEL MacDOUGALL herein, for racial bias, particularly with respect to the treatment of African-Americans, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant DETECTIVE MICHAEL MacDOUGALL herein to be in a position to maliciously prosecute the plaintiff and violate his federal constitutional rights, and/or permit these actions to take place with their knowledge and consent.[100]

Drawing all inferences in favor of Cooper, Cooper has failed to properly plead a plausible *Monell* claim against the City.  The Complaint contains nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" to withstand defendants' motion to dismiss.[101]  Cooper has failed to allege any fact which would give rise to an inference that the City had a constitutionally violative policy or that a policymaking individual was deliberately indifferent to the NYPD's alleged lack

---

number of keys were themselves sufficient to create reasonable suspicion.").

[100]    Compl. ¶ 39.

[101]    *Iqbal*, 556 U.S. at 663 (2009).

training.[102]  Therefore, Cooper's *Monell* claim against the City is dismissed with leave to amend.

###    D.    Leave to Amend

Because leave to amend should be freely given "when justice so requires,"  I grant Cooper leave to amend his *Monell* claim against the City if he can do so in compliance with his obligations under Federal Rule of Civil Procedure 11.

## VI.    CONCLUSION

For the foregoing reasons, Cooper's claim against the City of New York is dismissed with leave to amend.  Cooper's claim against Detective MacDougall survives.  Plaintiff may amend his Complaint within 30 days of this Opinion.

---

[102]    *See Missel v. County of Monroe*, 351 Fed. App'x 543, 546 (2d Cir. 2009) (finding that the allegation that the County was aware of prior complaints about officer's conduct does not provide a "plausible basis for an inference that the County failed" to properly train employee); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 536 (S.D.N.Y. 2012) (finding that plaintiff's allegations of "systematic flaws in the Town's misconduct review process" without any facts to substantiate these allegations were insufficient to state a plausible claim for relief); *Covington v. City of New York*, 916 F. Supp. 282, 290 (S.D.N.Y. 1996) ("Since Covington has not asserted a single concrete fact from which the Court can conclude that District Attorney Morgenthau either had unconstitutional office policies or failed to adequately train his ADAs, Covington's failure to train claim is legally insufficient and should be dismissed.") (citations omitted).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             October 2, 2013

24

**-Appearances-**

**For Plaintiff:**

Timothy P. Devane, Esq.

204 West 84th Street

New York, NY 10024

(646) 573-4985

**For Defendants:**

Carolyn K. Depoian

Assistant Corporation Counsel

City of New York

100 Church Street

New York, NY 10007

(212) 356-2368